```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  2/8/2021
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DONG YUAN, individually and on behalf of all other Employees similarly situated,

Plaintiff,

-against-

& HAIR LOUNGE INC., HAIR LOUNGE II INC., MIN FEI CHEN a/k/a WENDY CHEN, and CHEN LUNG LU a/k/a EDISON LU, JOHN DOE #1-10 and JANE DOE #1-10,

Defendants.

18 Civ. 11905 (AT)

**ORDER**

ANALISA TORRES, United States District Judge:

Plaintiffs, Dong Yuan and Xuanhao Xu, bring this action against Defendants, & Hair Lounge Inc., & Hair Lounge II Inc., Men Fei Chen a/k/a Wendy Chen, and Chen Lung Lu a/k/a Edison Lu, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"), §§ 190 *et seq.*, alleging minimum wage, overtime, spread of hours claims, and notice violations. Compl., ECF No. 31. Defendants move for summary judgment on the issue of whether Yuan is an employee under FLSA and the NYLL.[1] ECF No. 110. For the reasons stated below, Defendants' motion is DENIED.

## BACKGROUND[2]

Yuan and Defendants dispute nearly every fact regarding their relationship. The parties agree that Defendants & Hair Lounge Inc. and & Hair Lounge II Inc. are two hair salons located

---

[1] Although Defendants' motion states that Defendants are moving for summary judgment on the issue of whether Yuan is an employee under FLSA, ECF No. 110, their memorandum states that they are also moving on the same question under the NYLL, Def. Mem. at 4, ECF No. 111.
[2] Citations to a paragraph in Defendants' Rule 56.1 statement also include Plaintiffs' response.

in Manhattan. Ans. ¶¶ 9–10, ECF No. 38. Defendants contend that Yuan worked with them from April 1, 2017, until after July 2018. 56.1 ¶¶ 2, 23, ECF No. 106-1. But, Chen also testified that she hired Yuan in August 2016. Chen Tr. at 12:19–13:3, ECF No. 116-5. According to Yuan, he was hired in August 2016. Yuan Aff. ¶ 4, ECF No. 116-2. He claims that he worked at the salons between August 1, 2016, and August 31, 2017, and again between April 20, 2018, and October 31, 2018. *Id*.

When Yuan began working at the salons, he was inexperienced. Chen Tr. at 14:3–17; *see* Yuan Tr. at 42:5–9, ECF No. 112-3. While there, he sometimes purchased goods for salon customers out of pocket. 56.1 ¶ 13; Yuan Tr. at 118:3–119:9. In July 2018, Yuan was promoted to hair stylist. 56.1 ¶ 23.

The parties dispute the nature of Yuan's styling of dreadlocks. Defendants argue that Yuan had specialized skills in locking hair, and that he regularly scheduled his own clients for dreadlocks. 56.1 ¶¶ 4, 8. Yuan contends that he is interested in styling dreadlocks and that this is a hobby of his. 56.1 ¶¶ 4, 8. He likens his interest in dreadlocks to any other interest, like playing guitar. Yuan Tr. at 63:25–64:10. Yuan states that when he did dreadlock hair, he did this in his personal studio and almost never performed the service in Defendants' salons. 56.1 ¶ 4; Yuan Tr. at 66:8–17, 100:11–18.

## ANALYSIS

I.  Standard of Review

Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322–23 (1986). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The moving party initially bears the burden of informing the Court of the absence of a genuine dispute of material fact by citing particular evidence in the record. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323–24; *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002). If the nonmoving party has the ultimate burden of proof on specific issues at trial, the movant may also satisfy its own summary judgment burden by demonstrating that the adverse party cannot produce admissible evidence to support an issue of fact. *Celotex*, 477 U.S. at 322–23; *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine dispute of material fact. *Beard v. Banks*, 548 U.S. 521, 529 (2006); *PepsiCo*, 315 F.3d at 105. "Although a party opposing summary judgment need not prove its evidence in a form admissible at trial or under the evidentiary standards which will be required, it must show facts sufficient to enable a reasonable mind to conclude that a material dispute of fact exists." *Healy v. Chelsea Resources, Ltd.*, 736 F. Supp. 488, 491–92 (S.D.N.Y. 1990) (citation omitted). In deciding the motion, the Court views the record in the light most favorable to the nonmoving party. *Koch*, 287 F.3d at 165.

II. Application[3]

    A. FLSA

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and permits "an individual

---

[3] Plaintiffs object to Defendants' motion because they "failed to submit a separate Rule 56.1 statement." Pl. Mem. at 5, ECF No. 117. On May 29, 2020, Defendants filed a letter motion requesting leave to move for summary judgment. ECF No. 101. On June 15, 2020, the Court denied their application because they failed to submit a 56.1

within a company that . . . employs a worker [to be held] personally liable for damages as that worker's 'employer,'" in certain circumstances, *Irizarry v. Catsimatidis*, 722 F.3d 99, 105 (2d Cir. 2013), *cert denied,* 572 U.S. 1002 (2014).  To be held liable as an employer under FLSA, "an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." *Id.* at 109.  To determine whether an individual is an employee, the Court applies the "economic reality" test. *Id.* at 111.  This inquiry requires the Court to assess the totality of the circumstances and consider "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (citation and internal quotation marks omitted).

   In determining whether someone is an employee, versus an independent contractor, courts also consider the worker's level of investment in building personal relationships with his clients. *Saleem v. Corp. Transportation Grp., Ltd.*, 854 F.3d 131, 143 (2d Cir. 2017) (finding that drivers were independent contractors when they "made investments to build [client] relationships," advertised for their services independently, and served repeat personal clients).  A worker may be considered an independent contractor if he has the ability to seek work from other employers, while continuing his relationship with the defendant-employer. *Velu v. Velocity Exp., Inc.*, 666 F. Supp. 2d 300, 307 (E.D.N.Y. 2009).  "[T]he degree of skill and independent initiative required to perform the work" also factors into the analysis. *Hart v. Rick's Cabaret*

---

statement that adhered to this Court's individual practices, and ordered Defendants to renew their application by June 19, 2020.  ECF No. 105.  Defendants timely renewed their application, and attached a Rule 56.1 statement containing Plaintiffs' responses.  ECF No. 106.  Therefore, the Court will not deny Defendants' motion on this basis. *See Antwi v. Health & Human Sys. (Ctrs.) F.E.G.S.*, No. 13 Civ. 835 2014 WL 4548619, at *4 (S.D.N.Y. Sept. 15, 2014).

*Int'l, Inc.*, 967 F. Supp. 2d 901, 912 (S.D.N.Y. 2013) (quoting *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058–59 (2d Cir. 1988)).

Together, these factors do not "comprise a rigid rule for the identification of an FLSA employer," but rather "provide a nonexclusive and overlapping set of factors to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." *Irizarry*, 722 F.3d at 105 (citations and internal quotation marks omitted).

Defendants argue that Yuan was an independent contractor for several reasons. First, Defendants point to a document stating that Yuan is an independent contractor who set his own service rate and managed his own appointment schedule. Def. Mem. at 9,[4] ECF No. 111; ECF No. 112-1. Despite purportedly executing this agreement in 2017, over a year before Yuan brought suit, the agreement refers to him as "[t]he plaintiff." ECF No. 112-1. Yuan denies signing the document or entering in the agreement. 56.1 ¶ 2. Defendants do not dispute that Yuan never signed the agreement. Def. Mem. at 9. Even if the document were in admissible form, Zhu Decl. ¶ 3, ECF No. 112; Fed. R. Evid. 1002–1003, Defendants' characterization of Yuan as an independent contractor in a contract is not dispositive. *See Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 190 (S.D.N.Y. 2003) ("An employer's characterization of an employee is not controlling . . .").

Defendants next point to a series of text messages between Yuan and Chen that purportedly show Yuan making his own schedule and determining his own pay rate. Def. Mem. at 9–10; ECF No. 115-1. These text messages show Yuan asking Chen's permission to schedule

---

[4] Because Defendants' memorandum of law does not contain page numbers, the Court cites to the pages of their memorandum as numbered by ECF.

5

an appointment with a client to repair dreadlocks, Yuan asking Chen what portion of the client's payment for that service would be owed to Defendants, and Yuan setting the rate for that service at $100.  ECF No. 115-1 at 1.  These text messages only cover one appointment over the course of an, at least, year-long working relationship.  They show Yuan setting his own pay rate, but also show him scheduling the appointment and compensating Defendants at Chen's direction.  *Id.*  Therefore, these messages fail to show "the absence of a genuine issue of material fact" as to whether Chen or Defendants controlled Yuan's work.  *Celotex*, 477 U.S. at 323.

Defendants next argue that Yuan was an independent contractor because he developed his own client base.  Def. Mem. at 11, 13.  The parties agree that Yuan occasionally purchased goods for customers of the salon, 56.1 ¶ 13, but Yuan testified that he purchased these goods at the direction of other stylists for their clients, Yuan Tr. at 117:9–23.  Yuan's testimony gives rise to a question of fact as to whether his purchases developed independent client relationships, an issue that cannot be resolved by the Court.  *Healy*, 736 F. Supp. at 491–92.

Defendants also submit Yuan's posts on a social media platform advertising his dreadlock services as evidence that Yuan developed his own client base.  ECF No. 112-5; Def. Mem. at 11–12. Although these posts show Yuan advertising his services and scheduling his own appointments, the majority of these advertisements were posted when Yuan was not working with Defendants.  *See, e.g.*, ECF No. 112-5 at 12 (December 25, 2018 post stating, "[A]nyone who wants to have a new hair style can make an appointment with me"); *id.* at 31–38 (November 23, 2018 post stating, "Guys, please help me to forward [a series of pictures] as an advertisement").  Only two posts during his purported relationship with Defendants suggest that Yuan attempted to solicit his own clients.  *Id.* at 48 (September 30, 2018 post stating, "People who made appointments with me recently about making dreadlocks please contact me again");

6

*id.* at 54 (September 15, 2018 post stating, "All businesses please come and find me"). Yuan claims that he has a personal interest in dreadlocks, and posted about this interest as he would post about other interests—not to advertise his services. 56.1 ¶ 6; Yuan Tr. at 63:25–64:10. Based upon these submissions, Yuan clearly advertised his services independently. However, this factor alone is not dispositive. *See Saleem*, 854 F.3d at 143 (holding that advertising independently is indicative of independent contractor status when considered with other factors).

Defendants argue that Yuan worked at other salons and took breaks at his own discretion. Def. Mem. at 12–13. A photo submitted by Defendants, however, seems to show Yuan styling hair at another salon on March 5, 2018, when Yuan states he was not working with Defendants. ECF No. 112-5 at 99–100 (March 5, 2018 post of a picture of two individuals working at a different hair salon, with the caption "[w]orking hard."); Yuan Aff. ¶ 4. Text messages between Yuan and Chen also show Yuan working for another salon on April 14 and 15, 2018, days before he resumed working for Defendants on April 20, 2018. ECF No. 115-1 at 4–5; Yuan Tr. at 128:21–23; Yuan Aff. ¶ 4. Defendants point to these same messages to prove that Yuan took breaks at will, despite the fact that Yuan was not even working for Defendants when these texts were sent. Def. Mem. at 9–10, 12. Defendants, therefore, have not met their burden of showing that no dispute exists regarding whether Yuan worked for other salons while working for them and whether he took breaks at his discretion. *Celotex*, 477 U.S. at 323–24.

Defendants contend that Yuan also had specialized skills in styling dreadlocks, which would weigh in favor of classifying him as an independent contractor. Def. Mem. at 11; 56.1 ¶ 8. But, Chen testified that Yuan was inexperienced working in a salon when he began his relationship with Defendants. Chen Tr. at 14:3–17. Yuan also testified that he rarely dreadlocked hair in Defendants' salons. Yuan Tr. at 66:8–16, 100:11–18. And, the parties agree

7

that Yuan styled dreadlocks in his personal studio. 56.1 ¶ 4; Def. Mem. at 13. The record is not clear, therefore, as to whether Yuan practiced his skill in styling dreadlocks at Defendants' salons.

Because there are genuine triable issues of fact, Defendants' motion for summary judgement on their FLSA claim is DENIED.

### B. NYLL

In determining whether a worker is an employee or an independent contractor under the NYLL, courts consider "whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule." *Bynog v. Cipriani Grp., Inc.*, 802 N.E.2d 1090, 1098 (N.Y. 2003). Although these factors are similar to those considered under the FLSA inquiry, the focus of the *Bynog* test is slightly different: "the critical inquiry in determining whether an employment relationship exists pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Id.* at 1092–93.

For the reasons outlined above, there are significant disputes regarding whether Yuan controlled his own work schedule and whether he was free to engage in other employment. *Supra* § II.A. Accordingly, Defendants' motion for summary judgment on their NYLL claim is DENIED.


...

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is DENIED.

The Clerk of Court is directed to terminate the motion at ECF No. 110.

SO ORDERED.

Dated: February 8, 2021
      New York, New York

                                                                             ANALISA TORRES
                                                          United States District Judge