UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DONG YUAN, et al.,

        Plaintiffs,

-against-

& HAIR LOUNGE INC., et al.,

        Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/13/2023

18-CV-11905 (AT) (BCM)

**OPINION AND ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

Plaintiffs Dong Yuan and Xuanhao Xu brought this action under the Fair Labor Standards Act and state law against the owners and operators of two hair salons in Manhattan, seeking unpaid minimum and overtime wages and related relief. (*See* Dkt. 31 ¶¶ 1-4, 55-103.) Plaintiffs sued two corporate defendants, known as & Hair Lounge Inc. and & Hair Lounge II Inc., and two individual defendants: Min Fei Chen, a/k/a Wendy Chen; and Chen Lung Lu, a/k/a Edison Lu. *Id.* ¶¶ 9-18.

Now before the Court is a sanctions motion (Mtn.) (Dkt. 174) made by plaintiffs on November 18, 2022, shortly before trial, seeking sanctions up to and including the entry of a default judgment against all defendants as a penalty for (i) defendants' refusal to meet with plaintiffs to discuss settlement, as repeatedly ordered by the Court, *see* Mtn. at 1-2, and (ii) the individual defendants' "perjurious statements" concerning their whereabouts, made in an unsuccessful effort to delay trial and/or excuse their appearance at trial. *See id.* at 3-4.

For the reasons that follow, the motion will be granted in part. Defendants and their trial counsel, attorney Ge Qu, will be sanctioned pursuant to Fed. R. Civ. P. 16(f)(1)(C) in the amount of $1,000, payable to the Clerk of Court, for their violation of the Court's clear and lawful orders requiring them to meet for the purpose of discussing settlement. However, Rule 16(f) does not reach the individual defendants' alleged perjury. Moreover, while the Court has the inherent power to "deter abuse of the judicial process and prevent a party from perpetrating a fraud on the court,"

*Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020), untruthful testimony, standing alone, generally does not constitute fraud on the court unless the lies are established by clear and convincing evidence, concern "issues that are central to the truth-finding process," *Crown Awards, Inc. v. Trophy Depot, Inc.*, 2017 WL 564885, at *11 (S.D.N.Y. Feb. 13, 2017) (citation omitted), and "seriously affect[] the integrity of the normal process of adjudication." *Rybner v. Cannon Design, Inc.*, 1996 WL 470668, at *3 (S.D.N.Y. Aug. 20, 1996) (Sotomayor, J.) (quoting *Gleason v. Jandrucko*, 860 F.2d 556, 558 (2d Cir. 1988)). That standard has not been met here. Consequently, the Court will not exercise its inherent power to assess additional sanctions.

I.   **FACTUAL BACKGROUND**

   A.   **The Court Attempts to Schedule the Trial**

On April 1, 2021, utilizing the procedures adopted by the Southern District of New York to schedule jury trials during the COVID-19 pandemic, the Hon. Analisa Torres, United States District Judge, directed the parties to submit any "blackout dates" for trial during the fourth quarter of 2021. (Dkt. 121.) On August 8, 2021, defendants reported that they were unavailable for trial throughout the quarter because individual defendant Lu was "planning to leave the U.S. to visit his dying father who is hospitalized in Taiwan, China," and would be gone from the first week of October 2021 until "January or February 2020 [sic]." (Dkt. 123.)

On August 18, 2021, Judge Torres directed the parties to submit any blackout dates for trial in the first quarter of 2022. (Dkt. 125.) On November 10, 2021, defendants again reported that they would be unavailable for trial throughout the quarter because defendant Lu was "currently in Taibei, Taiwan visiting his father, who is hospitalized for Diabetes, heart diseases, as well as Covid-19. According to Mr. Lu, his father is kept in intensive care unit currently." (Dkt. 136.) Defendants explained that Lu was "expecting to return around March subject to travel policy and fight [sic] available between Taiwan and the United States." (*Id.*)

2

The Court then attempted to schedule the trial for the second quarter of 2022. (*See* Dkts. 137, 139). On February 4, 2022, defendants reported that Lu was still in Taiwan, but planned to return to the U.S. "in April 2022 and will be available for trial." (Dkt. 140.)

On March 3, 2022, the Court advised that it was not feasible to set a trial date for the second quarter of 2022, and directed the parties to submit their blackout dates for the third and fourth quarters. (Dkt. 141.) On April 29, 2022, defendants reported that they were generally available for trial in those quarters with the exception of a few discrete dates. (Dkt. 142.)

On July 11, 2022, Judge Torres set a trial date of November 21, 2022, to be preceded by a final pretrial conference on November 15, 2022. *See* 7/11/22 Order (Dkt. 146) at 1. In addition, the Court ordered that "[p]rior to the final pretrial conference, counsel for both parties, along with the parties themselves, shall meet in person for at least one hour to discuss settlement of this matter." *Id.*

### B.    Defendants Attempt to Avoid the Trial

On October 12, 2022, defendants requested an indeterminate adjournment of the trial. (Dkt. 154 at 1.) They reported that defendant Lu "went back to China earlier this year to take care of his family member who is in critical condition," and was "unable to return to the United States" due to "the Chinese COVID regulations." (*Id.*) In an attached declaration, Lu attested that, "[d]ue to the strict Chinese COVID regulations, [he] was not able to book [a] flight to return to the United States," though he was "actively exploring possibilities to book [a] plane ticket to return[.]" 10/7/22 Lu Decl. (Dkt. 154-1) ¶¶ 4-5. Lu did not identify the family member who was in critical condition in China (as opposed to Taiwan), did not provide any details regarding that person's medical condition, and did not reveal where he was in China.

Judge Torres denied the adjournment request as untimely, noting that Lu's asserted unavailability had already delayed the trial substantially, and that defendants had known about the

November 21, 2022 trial date for months. (*See* Dkt. 155 at 1-2.) The Court directed defendant Lu "to return to the United States for trial, which shall commence on November 21, 2022." (*Id*. at 2.) On November 7, 2022, the Court reminded the parties that, "prior to the final pretrial conference on November 15, 2022, counsel for both parties, along with the parties, are directed to meet in person for at least an hour to discuss settlement of this matter." 11/7/22 Order (Dkt. 159) at 2.

On November 9, 2022 – two weeks before trial – defendants sought leave to "amend the proposed joint pretrial order," which had been submitted a month earlier, "to introduce [the] deposition testimony of defendants Chen Lung Lu and Min Fei Chen in lieu of live testimony because they are unavailable to attend trial currently scheduled for November 21, 2022." Def. 11/9/22 Ltr. (Dkt. 161) at 1. According to the letter, attorney Qu had "duly informed Mr. Lu [of] the Court's decision and directed him to plan for travelling back to New York," only to be told that both Lu and Chen "were residing overseas and could not return to the forum." *Id*. at 2. In their accompanying declarations, Lu and Chen attested that they had traveled together "earlier this year" to Taiwan, to visit Lu's father, who – according to Chen – "fell seriously ill to [sic] COVID-19." 11/9/22 Chen Decl. (Dkt. 163-1) ¶¶ 3-4; 11/9/22 Lu Decl. (Dkt. 163-2) ¶ 3. According to Chen, both individual defendants "now live in Taiwan and could not return to the U.S. for the trial scheduled for November 21, 2022, because Mr. Lu's father requires assisted living and in-home personal care." 11/9/22 Chen Decl, ¶ 4. Lu added that his father "suffers from diabetes and heart disease." 11/9/22 Lu Decl. ¶ 5.

The following day, Judge Torres denied the motion as "untimely and unsubstantiated." 11/10/2022 Order (Dkt. 164) at 2. After reviewing defendants' various letters and declarations claiming that they were unavailable for trial – and noting that none of them were supported by medical or travel records – the Court ruled that "Defendants cannot offer deposition testimony at

4

trial in lieu of live testimony under these circumstances, where 'it appears that the witness'[] absence [is being] procured by the part[ies] offering the deposition.'" *Id*. (quoting Fed. R. Civ. P. 32(a)(4)(B)) (alterations in original). On November 13, 2022, the Court reiterated that "all Parties – Plaintiffs, the Corporate Defendants, and the Individual Defendants – are required to appear at trial." (Dkt. 169 at 2.) Additionally, the Court directed the parties, as well as their counsel, to appear for the pretrial conference two days hence. (*Id*.)

### C. The Final Pretrial Conference

At the final pretrial conference on November 15, 2022, both plaintiffs appeared in person, along with attorney Tiffany Troy and a Mandarin Chinese interpreter. Pretrial Conf. Tr. (Dkt. 210) at 2:2-7. Attorney Qu, together with attorneys Ziyi Gao and Guofeng Li, appeared for defendants, unaccompanied by their clients. *Id*. at 2:11-18. When the Court asked about the mandatory settlement meeting, attorney Troy reported that no such meeting had taken place, because "our overture for the in-person meet-and-confer . . . between the counsels as well as the parties for the in-person at least one hour settlement conferences has been declined by defendants." *Id*. at 3:10-13. Attorney Qu confirmed that his clients were unwilling to participate in a settlement discussion, stating that he "was informed by the individual defendants that were – they are residing in Taiwan, and they do not grant me settlement authority to continue settlement discussions." *Id*. at 3:15-18. Therefore, counsel explained, "I simply cannot represent a position of settlement on behalf of my clients." *Id*. at 3:18-19. Thereafter, Judge Torres reminded attorney Qu that his clients "are required to appear" for trial. *Id*. at 9:21-23. Counsel responded, "I will relay that order to my clients." *Id*. at 9:24-25.

At the end of the conference, attorney Troy asked the Court to give the parties a new deadline to discuss settlement – if not in person then "via Zoom or something." Pretrial Conf. Tr. at 17:24-18:2. Judge Torres set a deadline of "this Thursday," November 17, 2022. *Id*. at 18:5-6,

14-16. When attorney Qu pledged to "ask my client[s] to provide their availability in terms of their participation by video or teleconference," *id*. at 18:17-19, Judge Torres responded: "[I]t is not just that they would provide their availability, it's that they have to attend." *Id*. at 18:20-21.

### D. Defendants Again Refuse to Discuss Settlement

The following day – November 16, 2022 – attorney Troy emailed attorney Qu at 2:11 p.m. regarding defendants' availability for the settlement conference. *See* Mtn. Ex. 1 (Dkt. 174-1) at ECF p. 4. Less than two hours later, at 4:00 p.m., attorney Qu responded, "My clients are not interested in settling and we are not so authorized." *Id*. at ECF p. 1.

That same day, Judge Torres issued an order advising that the Court "has learned information that raises questions about whether Defendants have made false statements to the Court." 11/16/22 Order (Dkt. 170) at 1. The Court explained that it had "conducted its own investigation of social media accounts connected with Defendants," *id*. at 2, and found two postings – one on Yelp, and one on Instagram – suggesting that "Edison" was "due back in October," 2022, and "Wendy" was performing haircuts and coloring treatments in New York City in May through August 2022. *Id.* at 2-3. Judge Torres concluded that the posts, together with the individual defendants' shifting attestations as to their whereabouts and the reasons they could not return to the United States, "suggest" that those representations were false. *Id*. at 4.

For avoidance of doubt, the Court reminded defendants that they were "required to appear for trial on November 21, 2022," on pain of contempt. 11/16/22 Order at 4.

## II.     THE SANCTIONS MOTION

On November 18, 2022, plaintiffs filed their sanctions motion, requesting that defendants and their counsel be sanctioned pursuant to Rule 16(f) for failing to comply with the Court's orders to participate in a settlement conference. Mtn. at 2-3. In addition, plaintiffs argued, sanctions should be assessed because "the whole spiel proffered by Defendants about living 'in Taiwan and

6

could not return to the United States' is fictitious." *Id*. at 3. Plaintiffs pointed out that the Taiwanese government ended its COVID-related quarantine requirement on October 13, 2022, after which it "freely allow[ed] visitors to come into the United States," *id*. (citing the website of the Taiwan Centers for Disease Control), and accused defendants of deliberately conflating "Taiwanese free travel policy and Chinese zero-tolerance quarantine policies" to support their false claim that they could not travel to the United States from Taiwan. *Id*. Further, plaintiffs argued, the social media posts described by Judge Torres, together with plaintiff Xu's "sighting of an individual who looked just like Chen Lung Lu a/k/a Edison Lu in Chinatown in late October 2022," led them to be "almost entirely certain that the sworn declarations that Edison Lu and Wendy Chen are in Taiwan are perjurious." *Id*. at 2-3. As a sanction for defendants' "[u]tter [d]isrespect of the Tribunal and the Court," plaintiffs requested the entry of a default judgment against all four defendants. *Id*. at 4.

In their responding letter, dated November 21, 2022 and signed by attorney Qu, defendants asserted that defendant Lu was in fact in Xiamen, China. Def. Opp. (Dkt. 175) at 1. According to Qu, all of the representations he previously made to the Court "were based on information provided by Mr. Lu," and until "last week, [he] had no reason to doubt the truth and veracity of Mr. Lu's representations." *Id*. Qu conceded that there had been some "confusion" about Lu's whereabouts, due to his "vague references to Taiwan or China without exact locations[.]" *Id*. at 1, 3. Qu explained that he cleared up that confusion with his client during "multiple phone calls and text messages . . . last Thursday, November 17, 2022[.]" *Id*. at 1. As a result of those calls and messages, Qu learned that:

> Mr. Lu is a resident of Taipei, Taiwan, while his father, who requires medical care, is located in Xiamen, China. As such, Mr. Lu has had to travel between Taiwan and mainland China to care for his father who has been in and out from hospital.

*Id*. Defendants' letter attached unauthenticated copies of an "air ticket booking confirmation" reflecting a reservation, in defendant Lu's name, to fly from Taipei to Xiamen on November 15,

7

2022, and a Taiwanese immigration document which appeared to show that Lu entered and exited Taiwan five times between March and November 2022. (Dkts. 175-1, 175-2.)

As for defendant Chen, attorney Qu conceded that she was "present in the United States." Def. Opp. at 2. Qu learned the truth about Chen's whereabouts from Lu, but only after he "advised Mr. Lu of the significance of the Court's Order dated November 16, 2022," and particularly "of the potential sanctions for contempt of court, including incarceration." *Id*. Qu added that he "met Ms. Chen, for the first time, in the office on November 18, 2022." *Id*.

Qu argued that he should not be sanctioned because he did not "knowingly" make false statements, and because when he learned that some of the statements made to the Court were inaccurate, he "promptly sought to verify the new information," and "disclos[ed] the newly discovered facts," in accordance with Rule 3.3 of the New York Rules of Professional Conduct (RPC).[1]

Turning to the settlement conference orders, attorney Qu wrote that defendant Lu told him on November 15, 2022, and again the following day, that he was not to pursue settlement negotiations. Def. Opp. at 2. Citing RPC 1.2(a), Qu argued that he could not comply with this Court's orders to attend a settlement conference because he was "under an ethical obligation to abide by the client's decision regarding settlement." *Id*. at 2-3.[2]

---

[1] RPC 3.3 states, in relevant part: "If a lawyer, the lawyer's client, or a witness called by the lawyer has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal." 22 N.Y. C.R.R., § 1200, Rule 3.3(a)(3).

[2] RPC 1.2(a) states, in relevant part: "A lawyer shall abide by a client's decision whether to settle a matter." 22 N.Y. C.R.R. § 1200, Rule 1.2(a).

### III. TRIAL AND VERDICT

On November 21, 2022, the case proceeded to a jury trial. Defendant Chen appeared and testified, *see* Trial Tr. (Dkts. 179, 181, 183) at 2:13-14, 167:8-237:25, but defendant Lu did not appear. *Id*. at 2:16-20. Before the jury was impaneled, Judge Torres denied plaintiffs' sanctions motion insofar as it requested a default judgment, but another otherwise reserved decision. *Id*. at 5:18-23. On November 28, 2022, the jury returned a verdict in favor of plaintiff Yuan against all four defendants, but found that plaintiff Xu was not an employee of any defendant. *See* Trial Tr. at 298:6-308:17. On December 28, 2022, judgment was entered in favor of plaintiff Yuan in the amount of $66,755.44. (Dkt. 187.)[3]

Because "the imposition of sanctions is an issue collateral to and independent from the underlying case," *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 333 (2d Cir. 1999) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395-96 (1990)), the entry of judgment did not affect the Court's jurisdiction or authority with respect to the still-pending sanctions motion. *See id.* (holding that district court retained jurisdiction to impose sanctions under 28 U.S.C. § 1927 and its inherent power even though the sanctions motion was not made until after the court of appeals issued its mandate affirming the judgment entered by the district court). On January 27, 2023, Judge Torres referred the sanctions motion to me for determination. (Dkt. 198.)

### IV. ANALYSIS

#### A. Defendants' Disobedience of the Court's Pretrial Orders

Rule 16(f) authorizes a court to impose sanctions on a party or attorney who "fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C). "In deciding whether a sanction

---

[3] On July 13, 2023, an amended judgment was entered, adding an award of attorneys' fees and costs in the amounts of $29,125 and $400, respectively. (Dkt. 209).

9

is merited, the court need not find that a party acted in bad faith. The fact that a pretrial order was violated is sufficient to allow some sanction." *Petrisch v. JP Morgan Chase*, 489 F. Supp. 2d 437, 454 (S.D.N.Y. 2011) (Sullivan, J.) (quoting 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1531 (3d ed. 2010)); *see also Perez v. Edwards*, 2023 WL 5935029, at *3 (S.D.N.Y. Sept. 12, 2023) ("The Court need find only that there is clear and convincing evidence that counsel disregarded a clear and unambiguous scheduling or other pretrial order.") (quoting *Shanchun Yu v. Diguojiaoyu, Inc.*, 2019 WL 6174204, at *3 (S.D.N.Y. Nov. 20, 2019)); *Hamilton Int'l Ltd. v. Vortic LLC*, 2018 WL 5292128, at *2 (S.D.N.Y. Oct. 25, 2018) ("Sanctions may be awarded under Fed. R. Civ. P. 16(f) . . . without a finding of bad faith, and upon a finding that a party violated a pretrial order.

"Rule 16(f)'s 'explicit reference to sanctions' reflects the Rule's intention to 'encourage forceful judicial management,'" and it "vests a district court with 'discretion to impose whichever sanction it feels is appropriate under the circumstances.'" *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 53 (2d Cir. 2018) (quoting Fed. R. Civ. P. 16(f) advisory committee's note to 1983 amendment). Moreover, "[b]ecause sanctions pursuant to Rule 16(f) fall within the scope of pretrial matters, magistrate judges are well within their authority to impose such sanctions." *Grenion v. Farmers Ins. Exch.*, 2014 WL 1284635, at *4 (E.D.N.Y. Mar. 14, 2014).

In this case, the Court clearly, unambiguously, and repeatedly ordered the parties and their attorneys to meet to discuss settlement. It did so in writing on July 11, 2022, *see* 7/11/22 Order at 1; in writing again on November 7, 2022, *see* 11/7/22 Order at 2; and in open court on November 15, 2022, when Judge Torres extended the deadline for conducting the settlement meeting to November 17, 2022, authorized the parties to attend by Zoom, but reiterated that attendance was mandatory. *See* Pretrial Conf. Tr. at 18:20-21 ("[T]hey have to attend."). Whether or not defendants

10

were interested in settling the case, therefore, they – and their counsel – were obligated to comply with the Court's Orders and attend the conference. "Although a court cannot force litigants to settle an action, it is well established that a court can require parties to appear for a settlement conference, and impose sanctions pursuant to Rule 16(f) if a party fails to do so." *Bulkmatic Transp. Co., Inc. v. Pappas*, 2002 WL 975625, at *2 (S.D.N.Y. May 9, 2002) (collecting cases and sanctioning defendant's counsel for failing to attend mediation); *see also Kerestan v. Merck & Co. Long Term Disab. Plan*, 2008 WL 2627974, at *1 (S.D.N.Y. July 2, 2008) (sanctioning plaintiff because his "guardian/conservator did not appear at the settlement conference as ordered," leaving counsel "without a client or authorization to proceed with settlement"). Similarly, because the Court's orders appropriately required only that defendants participate in a settlement conference, Rule 1.2(a) cannot shield attorney Qu from sanctions. Rule 1.2(a) prohibits an attorney from settling a case without his client's consent. It does not prohibit the attorney from attending a conference at which settlement is discussed.

Noncompliance with judicial orders "is considered willful when the court's orders have been clear, when the party has understood them, and when the party's non-compliance is not due to factors beyond the party's control." *Figueroa v. W.M. Barr & Co., Inc.*, 2020 WL 996473, at *3 (S.D.N.Y. Mar. 2, 2020) (quoting *Davidson v. Dean*, 204 F.R.D. 251, 255 (S.D.N.Y. 2001)). That test is met here. Defendant Chen, who was in New York, was entirely capable of attending an in-person settlement meeting, as was defendants' counsel. Even if defendant Lu was physically out of the country during the months leading up to the trial, as he continues to claim, he was entirely capable of attending such a meeting via Zoom, as authorized by the Court at the final pretrial conference. However, on November 15, 2022, defendant Lu instructed his attorney "in writing, via Wechat, that he [was] not interested in settlement negotiations," and thereafter reiterated to his

11

counsel that "settlement discussions were not to be pursued[.]" Def. Opp. at 2. This constitutes willful noncompliance with the orders of this Court.

The only remaining question is what sanction to impose. Rule 16(f)(1)(C) authorizes a district court to issue "any just orders." The sanction proposed by plaintiffs – entry of a default judgment against defendants – is no longer available, and in any event would be a disproportionate penalty for failure to attend a settlement conference, particularly in the absence of any showing of prejudice to plaintiffs. *See Mordechai v. St. Luke's-Roosevelt Hosp. Ctr.*, 2001 WL 699062, at *2 (S.D.N.Y. June 20, 2001) (rejecting terminating sanctions as too harsh, and recommending monetary sanctions totaling $550, where plaintiff ignored two orders requiring him to attend settlement conferences without "any excuse or explanation"). However, defendants' intransigence should not go unsanctioned. Just as "[t]he Court expects parties to comply with orders," *Hamilton*, 2018 WL 5292128, at *3, noncompliant parties should expect consequences. Accordingly, defendants and their counsel shall pay the sum of $1000 to the Clerk of Court. The liability is joint and several. Payment shall be made within 30 days of this Opinion and Order.

B.     **Defendants' Perjurious Statements**

In their letter-application, plaintiffs asked the Court to draw an inference that defendants were not "truthful about their whereabouts." Mtn. at 2. No inference is required; defendants have now conceded, in their responding letter, that – at a minimum – both Lu and Chen made false statements under oath when they attested, in November 2022, that defendant Chen lived in Taiwan and was unable to return to the United States for trial. 11/9/22 Chen Decl. ¶ 4 ("We both now live in Taiwan and could not return to the U.S. for the trial[.]"); 11/9/22 Lu Decl. ¶ 5 ("[W]e are unable to return to the United States for the trial[.]"). And while defendant Lu may well have spent much of 2022 in Taiwan, he was not telling the truth when he attested, in October 2022, that he could not return to the United States due to "strict Chinese COVID regulations." 10/7/22 Lu Decl. ¶ 4.

His own immigration records (Dkt. 175-2) show that he entered and exited Taiwan five times from March through November, 2022.

However, Rule 16(f) does not authorize sanctions for general litigation misconduct, and plaintiffs do not identify any other rule or statute empowering a federal district court to sanction a party for making false statements in pretrial declarations. I must therefore consider whether to draw on the Court's inherent power to "deter abuse of the judicial process and prevent a party from perpetrating a fraud on the court." *Yukos Cap.*, 977 F.3d at 235.

"Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). "Thus, clear and convincing evidence of bad faith is a prerequisite to an award of sanctions under the court's inherent power." *Yukos Cap.*, 977 F.3d at 235. Moreover, "[t]he imposition of sanctions pursuant to a court's inherent authority is truly discretionary." *Id*. Even where wrongdoing has occurred, "the court is not required to sanction a party or attorney." *Id*. (quoting *Murray v. City of Columbus*, 534 Fed. Appx. 479, 485 (6th Cir. 2013)).

Untruthful testimony, standing alone, generally does not constitute a "fraud on the court" warranting the imposition of sanctions under the court's inherent power. *See, e.g.*, *Rybner*, 1996 WL 470668, at *3 (collecting cases); *Crown Awards*, 2017 WL 564885, at *10 (collecting cases); *Skywark v. Isaacson*, 1999 WL 1489038, at *14 (S.D.N.Y. Oct. 14, 1999) ("Perjury alone does not constitute fraud upon the court."), *aff'd,* 2000 WL 145465 (S.D.N.Y. Feb. 9, 2000). "Only when a fraud 'seriously affects the integrity of the normal process of adjudication,' does the conduct amount to a fraud upon the court." *Rybner*, 1996 WL 470668, at *3 (quoting *Gleason*, 860 F.2d at 558). Thus, sanctions may be warranted where the lies concern "issues that are central to the truth-finding process," *Crown Awards*, 2017 WL 564885, at *11, or where they are so pervasive as to

13

taint the evidentiary record and "impair[] . . . the fact finder's capacity to adjudicate the case." *Skywark*, 1999 WL 1489038, at *16.

Here, although the individual defendants' conduct was reprehensible – and their counsel's unquestioning acceptance of their story was careless at best – their lies did not concern the merits of the dispute, did not interfere with discovery, did not taint the evidentiary record, and did not impair the jury's capacity to adjudicate the case. Rather, the perjurious declarations were submitted as part of a last-minute effort to further delay the trial of this action or, in the alternative, to excuse the individual defendants' personal appearances and permit the case to proceed based upon their deposition testimony. Moreover, that effort was entirely unsuccessful. The trial was not further delayed, and the defendants were not permitted rely on their deposition testimony. After considering all of the evidence – including the live testimony of defendant Chen – the jury returned a verdict for one of the two plaintiffs, against all four defendants, and judgment was entered accordingly. Since I cannot conclude that the false statements made by the individual defendants "seriously affect[ed] the integrity of the normal process of adjudication," *Rybner*, 1996 WL 470668, at *3, I decline to impose additional sanctions pursuant to the Court's inherent authority.

## V.    CONCLUSION

Plaintiffs' motion for sanctions is GRANTED IN PART. Defendants and their counsel shall pay a total of $1,000 to the Clerk of Court within 30 days of the date of this Opinion and Order.

Dated: New York, New York
          October 13, 2023                             SO ORDERED.

_____
**BARBARA MOSES**
**United States Magistrate Judge**